**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**DAVID SIMMONS, et al.,**

      Plaintiffs,

**v.**                                        **Civil Action No. 2:09-CV-121
(BAILEY)**

**LONNIE A. PILGRIM, et al.,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court are The Prudential Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint [Doc. 52] and Pilgrim Defendants' Motion to Dismiss and Incorporated Memorandum of Law [Doc. 54], both filed on May 21, 2010. Plaintiffs jointly responded to both motions on June 22, 2010. See Doc. 63. The moving parties filed their respective replies on July 16, 2010. See Docs. 72 & 73. This Court has reviewed the record and the arguments of the parties and, for the reasons set out below, **ORDERS** that the motions to dismiss [Docs. 52 & 54] should be **GRANTED IN PART** to the extent that this matter shall be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust plan remedies.

## BACKGROUND

**I.**    **Factual Allegations**

The challenged Amended Complaint [Doc. 30] contains the following allegations. On January 4, 2009, plaintiff Patty L. Funkhouser submitted a formal written request to the

1

Plan Fiduciaries of the Pilgrim's Pride Retirement Savings Plan ("the Plan")[1] pursuant to

ERISA § 104, 29 U.S.C. § 1024, which establishes a participant's right to plan documents

and the fiduciary's duty to provide such documents.  On February 4 and 5, 2009, defendant

Renee DeBar provided plaintiff Funkhouser with the Plan and amendments that are the

subject of this litigation.  (Am. Compl. ¶¶ 74-75).  The contested portions of the Plan are

discussed below.

### A.     2004 Amendment and Restatement to the Plan

The plaintiffs allege that in response to plaintiff Funkhouser's request for Plan

documents, defendant DeBar provided plaintiff Funkhouser with the purported 2004

Amendment and Restatement of the Plan document.  (Am. Compl. ¶ 74).  The plaintiffs

allege that the 2004 Amendment and Restatement is unexecuted and, thus, violates the

Plan's amendment procedure, which, at the time, provided, "Any such amendment shall be

by written instrument executed by the [Pilgrim's Pride Corporation]."  (See 2004

Amendment and Restatement, § 19.1 & p. 86 (execution page)).  The Prudential

defendants direct the Court to Exhibit 1 to their motion – providing a purported Unanimous

Written Consent of the Board of Directors of Pilgrim's Pride Corporation.  (Prudential Def.

---

[1]     The Pilgim's Pride Retirement Savings Plan ("the Plan") is a defined contribution plan sponsored by the Company, Pilgrim's Pride.  Under the Plan, employees could contribute up to 20% of their compensation, and the company would, in turn, make matching contributions up to certain limits.  (Plan §§ 1.1, 4.2; Compl. ¶ 32).  Prior to January 1, 2008, the company made a "Regular Matching Contribution" equal to 100% of the participant's tax-deferred contributions up to $7 per week.  (Plan § 6.6; Compl. Ex. J (2005 Summary Plan Description), at 13; Compl. ¶ 34).  By amendment effective January 1, 2008, the Company discounted the Regular Matching Contribution and replaced it with one equal to the first 25% or 30% (depending on participant location) of the first 6% of a participant's tax-deferred contributions ("the Employer 2008 Matching Contribution").  See Dec. 4, 2007, Resolutions of the Pension Committee at ¶ A.6; Compl., Ex. G (Amend. No. 6); Compl., Ex. H (Amend. No. 7).

Mem. pp. 5 & 10).  That document provides:

> NOW, THEREFORE, BE IT RESOLVED, that the 401(k) Plan is amended
> and restated effective January 1, 2004 to read in its entirety as set forth on
> Exhibit C attached hereto.

(Prudential Defs. Mem. Ex. 1, p. 2).

The plaintiffs deny the existence of Exhibit C to the Unanimous Written Consent of the Board of Directors of Pilgrim's Pride Corporation.

### B.    Second Amendment to the Plan

The plaintiffs allege that the document defendant Debar provided to plaintiff Funkhouser as the Second Amendment is an amalgamation of pages from different versions of what appear to be similar documents; that is, the substantive amendments are identified as "version 3" and the execution page is identified as "version 2."  (Am. Compl. ¶¶ 82 & 96-106).  The Prudential defendants have attached an executed and complete "version 2" of the Second Amendment as Exhibit 2 to their Motion.  Plaintiffs allege this document is unsworn to and that Ms. DeBar sent a hybrid of versions 2 and 3 to Ms. Funkhouser.  Thus, the plaintiffs allege that the Prudential defendants rely on a facially invalid Unanimous Written Consent of the Board of Directors of Pilgrim's Pride Corporation as the 2004 Amendment and Restatement, additionally calling into question their alleged duty to determine whether the amendments were bona fide.

### C.    Third Amendment to the Plan

The plaintiffs allege that the Third Amendment to the Plan violates ERISA and the Plan's amendment procedure, as the Third Amendment is unexecuted.  (Am. Compl. ¶¶ 78 & 81).  The Prudential defendants assert that ". . . the copy received by [Prudential Bank

& Trust] ("PB&T") was apparently approved by the written consent of the Investment Committee." (Prudential Defs. Mem. p. 6 (referencing Ex. 3 to their Motion – a purported Unanimous Written Consent of the Investment Committee)). Thus, the plaintiffs allege that the Prudential defendants failed to satisfy their fiduciary duty to determine whether the Third Amendment was a bona fide amendment and that they breached their fiduciary duties by adhering to an allegedly invalid amendment.

### D.    Seventh Amendment to the Plan

With regards to the Seventh Amendment, the plaintiffs allege that the defendants: (i) failed to discharge their duties to verify that the Amendment was a bona fide amendment; (ii) breached their duty to adhere to the terms of the Plan, insofar as such terms are consistent with ERISA; (iii) breached their fiduciary duties by complying with directions that violated ERISA; (iv) failed to pursue delinquent employer matching contributions; (v) breached their fiduciary duties by failing to file a claim in the bankruptcy proceedings seeking delinquent employer matching contributions; and (vi) breached their fiduciary duties by engaging in prohibited transactions and prohibited self-dealing with regard to delinquent employer matching contributions. (Am. Compl. ¶¶ 84-85, 92-98, 100-04, 108-26 & 128-46).

The Pilgrim's and Prudential defendants argue that the Seventh Amendment simply clarifies the Sixth Amendment to the Plan. They further argue that the Sixth Amendment provided by defendant Debar to plaintiff Funkhouser is not really the sixth amendment to the Plan. Rather, the "real" sixth amendment to the Plan is a Pension Committee Resolution from December 4, 2007. (Pilgrim's Defs. Mem. pp. 14-17; Prudential Def. Mem. pp. 7-8). The defendants argue that the December 4, 2007, Pension Committee Resolution

amended the Plan to consolidate all the employer matching contributions into one global matching contribution and that, since it was adopted prior to January 1, 2008, there was no retroactive reduction of Pilgrim's Pride's contribution obligation to the Plan. (Id. at 15-17); (Id. at 7-8). Thus, the defendants assert that the Seventh Amendment, although not adopted until March 27, 2008, simply memorialized and clarified any ambiguities contained in the December 4 Resolution.

### E. Eighth Amendment to the Plan

The plaintiffs allege that the Eighth Amendment was purportedly adopted on March 27, 2008, and that it states that the right to receive employer Matching Contributions is eliminated effective January 1, 2008, for certain Plan participants employed in certain locations. (Am. Compl. ¶ 86). The plaintiffs also allege that eliminating the right to employer Matching Contributions retroactively to January 1, 2008, impermissibly reduced certain Plan participants' accrued benefits. (Id.). The plaintiffs assert that under the Plan, Regular Matching Contributions are based on the Plan participants' elective deferrals to the Plan and that the eligible Plan participants already had their compensation reduced and deferred to the Plan. Thus, the plaintiffs allege that the Eighth Amendment is invalid. (Id.) The Prudential defendants assert that the Eighth Amendment merely clarified that which was already done by the Sixth Amendment.[2] (Prudential Defs. Mem. p. 8).

---

[2] The relevant language of the Sixth Amendment to the Plan provides:

(b) 25 percent of the Tax-Deferred Contributions made for the weekly pay period by Participant who is a partner in El Dorado, AK, Athens, GA, Carrolton, GA, or Live Oak, FL.
(Prudential Def. Mem., Ex. 6, p. 9 ¶ 15)

The relevant language of the Eight Amendment provides:

The plaintiffs allege that a change in the Eighth Amendment created a greater restriction by reducing the matching contribution obligation from all Plan participants employed in these locations to only those participants who are hourly bargaining unit Plan participants.

## II.    Procedural History

The plaintiffs filed their original Complaint [Doc. 1] in this Court on October 9, 2009. On December 14, 2009, the plaintiffs amended their Complaint primarily to correct an oversight in failing to attach exhibits to the Complaint.  See Doc. 30.  The Amended Complaint [Doc. 30] alleges six causes of action:[3]

The remaining claims are :  (1) Breach of Fiduciary Duties Associated with Adhering to Invalid Plan Amendments; (2) Enforcement of the Valid Terms of the Plan; (3) Breach of Fiduciary Duties by Failing to Pursue the Plan's Right to Delinquent Employer Contributions Against the Company; (4) Breach of Fiduciary Duty Associated with the Failure to File a Proof of Claim in the Bankruptcy Proceeding; (5) Breach of Fiduciary Duties Associated with the POR Vote; and (6) Fiduciary Accounting.

---

(b) 25 percent of the Tax-Deferred Contributions made for the weekly pay period by Participant who is an hourly bargaining unit partner in El Dorado, AK, Athens, GA, Carrolton, GA, or Live Oak, FL.
(Id. at Ex. 8, p. 1 ¶ 1).

[3] The plaintiffs consent to dismissal of claims against the Administrative Committee of the Plan.  Under ERISA, a committee is not a person and, therefore, cannot be a fiduciary.  See ERISA §§ 3(9), (21); 29 U.S.C §§ 1002(9), (21); *see also* **Curtiss-Wright v. Schoonejongen**, 514 U.S. 73, 79 (the term, "person," wherever it appears in ERISA, is interpreted in accordance with ERISA's statutory definition).  Accordingly, the claims against the Administrative Committee as a separate entity are dismissed.  Additionally, the plaintiffs concede that any claim remaining in the Amended Complaint regarding the failure to provide § 204(h) notice should be dismissed.

The defendants have moved to dismiss these claims, asserting that: (1) the plaintiffs lack standing because they have not alleged any injury as a result of the 2004 Restatement of the Plan or the First, Second, Third, or Eighth Amendments; (2) there was no retroactive cutback of benefits; and, alternatively, (3) this Court should remand questions of Plan interpretation to the Plan Administrator for a determination in the first instance.

## DISCUSSION

### I.    Applicable Standards

#### A.    12(b)(6) Motion to Dismiss

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243-44 (4th Cir. 1999). When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).

### II.    Analysis

The remaining claims set forth in the Amended Complaint are derivative of the following issues:

1.	Whether the 2004 Amendment and Restatement to the Plan and the 1st and 3rd Amendments are invalid for lack of execution;

2.	Whether the 2nd Amendment is invalid because certain pages are from different versions;

3.	Whether the 7th and 8th Amendments illegally cut back accrued benefits and/or reduce future benefit accruals without providing notice to participants; and

4.	Whether the vote on the Plan of Reorganization was invalid as an ERISA prohibited transaction based on alleged misleading voter solicitation packets.

Upon a preliminary review, this Court believes this matter can be narrowed down to (a) interpretation and validity of the Sixth and Seventh Amendments and (b) whether the Plan participants were entitled to one or two matching contributions – the original matching contribution and the 2008 matching contribution – during the period of January 1, 2008, to March 27, 2008.

## A.	Failure to Exhaust Administrative Remedies

"Although ERISA does not explicitly contain an exhaustion requirement, 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits . . ..'" **Smith v. Sydnor**, 184 F.3d 356, 362 (4th Cir. 1999); quoting **Makar v. Health Care Corp.**, 872 F.2d 80, 82 (4th Cir. 1989).  Accordingly, a "plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." **Gayle v. United Parcel Service**, 401 F.3d 222, 226 (4th Cir. 2005); quoting **Makar**, 872 F.2d at 82.

Requiring exhaustion of Plan remedies premised upon claims for benefits is essential to ERISA's explicit requirement that benefit plans provide internal dispute resolution procedures for participants whose claims have been denied. *See Id*. at 83. This exhaustion requirement further "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id*.

Additionally, "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated *plan* rather than upon an interpretation and application of *ERISA*." **Smith v. Sydnor**, 184 F.3d at 362 (emphasis in original). Accordingly, the first issue this Court must address is whether the plaintiffs' claims are "a recasting of claim[s] for benefits that require[] exhaustion of internal plan provisions before [the] plaintiff[s] can bring suit in federal court." *Id*. at 361.

In order to make such a determination, the **Sydnor** Court provides the following guidance:

> [case law] require[s] a plaintiff to exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits. Under those circumstances, it is clear that such a claim is a naked attempt to circumvent the exhaustion requirement. This interpretation is consistent with our prior decision in **Coyne & Delany Co. v. Blue Cross & Blue Shield**, 102 F.3d 712 (4th Cir. 1996), where we considered whether a company had a cause of action under ERISA to seek reimbursement from an insurance company

for medical expenses incurred by one of its employees. *See id.* at 713-14. We noted that although Coyne pleaded its claim as a breach of fiduciary duty,[4] it in actuality sought benefits, for which it had no cause of action because the specific terms of ERISA § 502(a)(1)(B) limited a cause of action for benefits to participants and beneficiaries of the ERISA-regulated plan. *See id.* at 714. We concluded that "[t]o permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B)[5] by artful pleading; indeed *every* wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory." *Id.* In sum, [case law] instruct[s] us that a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA.*

---

[4]     The fiduciary duty provisions of ERISA provide:

A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . ..

ERISA § 404(a)(1)(D).

ERISA § 502(a)(2) authorizes "[a] civil action . . . by the Secretary, or a participant, beneficiary or fiduciary for appropriate relief under section 409 [authorizing claims for breach of fiduciary duty]."

[5]     Employee Retirement Income Security Act Section 502(a)(1) provides, in relevant part:

(a) Persons empowered to bring a civil action. A civil action may be brought–
        (1) by a participant or beneficiary–
                        . . .
                (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

184 F.3d at 362 (emphasis in original)(citations omitted).

Following the above analysis, this Court finds that certain of the plaintiffs' claims indeed fall on the sword of interpreting the Plan itself. The Plan provides an internal remedies procedure and sets forth the Plan Administrator's authority with regards to dispute resolution. Article XVIII, Section 18.1 of the Plan states:

> The Sponsor, which shall be the administrator . . . shall be responsible for the administration of the Plan and . . . shall have all such powers and authorities . . . to interpret and construe the provisions of the Plan, to make benefit determinations, and to resolve any disputes which arise under the Plan.

To that end, the Plan sets forth its internal dispute resolution in Section 18.4, Claims Review Procedure:

> Whenever a claim for benefits under the Plan filed by any person . . . is denied . . . the Sponsor shall transmit a written notice of such decision . . . contain[ing] a statement of (i) the specific reasons for the denial of the claim; (ii) specific reference to pertinent Plan provisions on which the denial is based; (iii) a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such information is necessary; (iv) that the Claimant is entitled to receive . . . copies of all documents; (v) records and other information relevant to the Claimant's claim . . .; and (vi) a statement that there is no further administrative review following the initial review, and that the Claimant has a right to bring a civil action under ERISA Section 502(a) if the Sponsor's decision on review is adverse . . ..

This Court finds that governing law requires it to dismiss this matter to pursue these available administrative remedies.

## B. The Futility Exception

The plaintiffs argue in the alternative that, if the Court finds that administrative remedies have not been exhausted, it would nevertheless be futile to require such exhaustion given the defendants' position as stated in its motion.  As explained above, "[b]efore bringing a civil action pursuant to § 502, a plaintiff must first exhaust his or her remedies available under the Plan.  *Harrow [v. Prudential Ins. Co. of America]*, 279 F.3d [244,] 249 [(3d. Cir. 2002)] (citing *Weldon [v. Kraft, Inc.]*, 896 F.2d [793,] 800 [(3d Cir. 1990)] (citations omitted).  However, this requirement is excused if a plaintiff provides a 'clear and positive showing' that exhaustion is futile.  *Harrow*, 279 F.3d at 249 (quoting *Brown v. Cont'l Baking Co.*, 891 F.Supp. 238, 241 (E.D.Pa. 1995)); accord *D'Amico [v. CBS Corp.]*, 297 F.3d [287,] 293 [(3d. Cir. 2002)].  Conclusory statements that amount to nothing more than 'bare allegation[s] of futility' do not excuse the exhaustion requirement.  *Menendez v. United Food & Commercial Workers Local 450T, AFL-CIO*, 2005 WL 1925787, *1-2 (D.N.J. 2005)."  *Engers v. AT&T*, 428 F.Supp.2d 213, 229 (D.N.J. 2006).

A court must weigh several factors when making its determination as to whether a plaintiff is entitled to the above "futility" exception, "including (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the . . . company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile."  *Harrow*, 279 F.3d at 250.  Additionally, "plaintiffs who fail to make known their desire for benefits to a responsible party are precluded from seeking judicial relief."  *D'Amico*, 297 F.3d at 293.

After considering the above, this Court finds no such clear and positive showing of

futility. This Court will not make a finding of futility based solely upon the defendants' position taken in the adversarial context of this litigation.

### C. Authority to Amend the Plan

The plaintiffs challenge the authority under which the Six and Seventh Amendments were adopted. The Pilgrim's defendants have challenged the plaintiffs' claims against the Plan Administrative Committee by pointing out to this Court that the term "person" as defined by ERISA does not include committees. (Pilgrim Def. Mem, pp. 24-25 (quoting the ERISA § 3(9), 29 U.S.C. § 1002(9), defining the term "person")). Plaintiffs counter that if a committee is not a "person" under ERISA, then the Investment Committee Unanimous Consent of the Investment Committee was invalid as a matter of law, because a "nonperson" could not have had the authority to amend the Plan, nor could it delegate amendment authority to the Investment Committee and, therefore, the formation documents of the Investment Committee.

29 U.S.C. § 1102(b)(3) requires the Plan to provide a "procedure for amending such plan," and for "identifying the persons who have authority to amend the plan." Generally, "[a]n employer is free under ERISA, for any reason at any time, to amend a pension benefit plan which the employer sponsors." *Johannssen v. Dist. No. 1-Pac. Coast Dist.*, 136 F.Supp.2d 480, 492-93 (D.Md. 2001); citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 883, 116 S. Ct. 1783 (1996). To the extent ERISA imposes such requirements, it appears the same were followed in this case.

The Plan provides that the Company "may at any time and from time to time, by action of its board of directors, or such officers of the Sponsor as are authorized by its

board of directors, amend the Plan, either prospectively or retroactively. Any such amendment shall be by written instrument executed by the Sponsor." (Plan § 19.1). Further, the Plan states that "[a]ny act authorized, permitted, or required to be taken under the Plan by the Sponsor . . . may be taken by a majority of the members of the board of directors of the Sponsor, either by vote at a meeting, or in writing without a meeting, or by the employee or employees of the Sponsor designated by the board of directors to carry out such acts on behalf of the Sponsor." (Plan § 18.2; Amend. No. 6).

In so carrying out this authority, the Plan further grants "absolute discretionary authority" to the Company or any individual to whom authority has been delegated under the Plan to "interpret[] or constru[e] the provisions of the Plan[.]" (Plan § 18.2; Amend. No. 6, § 18.3). Fiduciary responsibility for plan administration was granted to the Administrative Committee by Amendment No. 6, effective January 1, 2008.

As the "Employer" under the Plan, Pilgrim's Pride had the right to amend the Plan by a written instrument executed by it so long as the amendment did not reduce a Plan participant's accrued or vested benefits in the Plan. "Where . . . the employer has the authority to amend a pension plan and the employer amends the plan through a resolution or vote of a board of directors, such an amendment is valid. *See **Yenyo v. Comms. Satellite Corp.**,* 899 F.Supp. 1423, 1425 (D.Md. 1995) (where plan document vested the employer with the authority to amend the plan and the employer's board of directors adopted the amendment, the amendment was valid); ***Averhart v. U.S. WEST Mgmt. Pension Plan****,* 46 F.3d 1480, 1489 (10th Cir. 1994) (where the pension plan expressly provides for amendments by the Employee Benefit Committee subject to approval of the

board of directors, amendment was valid even though the board of directors did not pass a formal resolution authorizing the amendment); ***Spacek v. Trustee of the Agreement of Trust for Maritime Assoc.-I.L.A. Pension Plan,*** 923 F.Supp. 960, 962 (S.D.Tex. 1996) (where plan document authorized the board of trustees to amend the plan, the amendment was valid even if the board did not comply with its own internal procedures in amending the plan), *rev'd on other grounds,* 134 F.3d 283 (5th Cir. 1998).

Thus, when Pilgrim's Pride approved the written resolution amending the terms of the Plan, and voted on December 4, 2007, to ratify the written resolution, the Amendment became binding on the Plan "as long as it did not reduce the plan participants' accrued or vested benefits in the Plan." ***Johannssen***, 136 F.Supp.2d at 493.

With respect to the Sixth Amendment, the plaintiffs allege that the Pension Committee is not a person under ERISA and, thus, cannot be delegated authority to amend an ERISA-covered Plan, and the Pension Committee's amendment authority was limited to amendments that "reflect changes required by law, provide administrative practices or clarifications that do not materially affect the financial obligations of the Corporation or the level of Plan benefits . . .." (Pilgrim's Defs. Mem., Ex. 10, p. 1; Prudential Defs. Mem., Ex. 5, p. 1). Accordingly, the plaintiffs allege that the Pension Committee lacked the authority to adopt the Pension Committee Resolution as an amendment (*i.e.*, the purported "real" sixth amendment), because the removal of a matching contribution was not required by law, did not pertain to Plan administrative provisions, and was not a clarifying amendment. Thus, the plaintiffs allege the document that the defendants now assert is the "real" sixth amendment cannot be an amendment to the Plan as a matter of law. Alternatively, the

plaintiffs argue that if the Pension Committee Resolution were a valid Plan amendment, it merely adds the 2008 Matching Contribution under the Plan and that there is no modification reducing or eliminating any employer matching contribution.  (Debar Dec., ¶¶ A.1-A.9)

The Pension Committee Resolution explicitly states:

"Now, Therefore, Be It Resolved, effective January 1, 2008 Amendment 6, to the [Plan] is adopted in substantially the form attached hereto with such changes as ERISA counsel may recommend . . .."

(Id. at ¶ A).

The plaintiffs allege that defendant DeBar failed to include the stand-alone Sixth Amendment to the Plan, referenced in the Pension Committee Resolution, to her Declaration filed with the Pilgrim's Defendants' Motion to Dismiss.  The Prudential defendants do, however, attach the stand-alone Sixth Amendment to their Motion.  (Prudential Defs. Mem. Ex. 6).  The plaintiffs allege that the terms of the stand-alone Sixth Amendment provided by defendant DeBar merely adds the 2008 Matching Contributions to the Plan, and it does not delete or reduce any employer matching contribution obligation to the Plan and its eligible participants.  The plaintiffs assert that even the Pilgrim's defendants admit that "[the Sixth Amendment] did not explicitly state that the Regular Matching Contribution was discontinued."  (Pilgrim's Defs. Mem. p. 15).

The Sixth Amendment reads, in relevant part, as follows:

A "Matching Contribution" means any Employer Contribution made to the Plan on account of a Participant's Tax-Deferred Contributions as provided in Article IV, including Employer 2008 Matching Contributions, Regular

Matching Contributions, a Profit Sharing Contribution Tier 2, and any such contribution that is designed by an Employer as a Qualified Matching Contribution.

(Ex. 2, pp. 1-2, ¶ 2).

The defendants assert that the Seventh Amendment was simply a "clarifying" amendment. (Pilgrim's Defs. Mem. p. 10; Prudential Def. Mem. pp. 7-8). The plaintiffs allege that the Pension Committee's authority to adopt clarifying amendments was limited to clarifications that do not materially affect the financial obligations of the Corporation or the level of Plan benefits. (Pilgrim's Defs. Mem., Ex. 10, p. 1; Prudential Defs. Mem., Ex. 5, p. 1).

The Court acknowledges the plaintiffs' arguments that the resolutions do not expressly state that the new matching plan takes the place of the prior one, as the written Seventh Amendment attempts to achieve. This will become more clear to this Court once an administrative record is compiled.

### D.     Breach of Fiduciary Duty

The plaintiffs' assert various breach of fiduciary claims derivative of the alleged improper amendments as well as the Trustee's failure to pursue delinquent contributions in the bankruptcy proceedings. As mentioned above, since January 1, 2008, the Plan received matching contributions solely under the 2008 contribution scheme.

### i.     Plan Amendments

Plaintiffs allege that "Defendant PB&T knew or should have known" that certain amendments were invalid. (Compl. ¶ 96(A)). Thus, they assert "PB&T breached its duties of loyalty and prudence under ERISA by complying with the Pilgrim's amendments." (Id.

at ¶ 96(B)).  Therefore, the plaintiffs contend that PB&T is "liable as a co-fiduciary for any losses resulting from other fiduciaries discharging their duties in compliance with the invalid amendments to the Plan."  (Id. at ¶ 96(C)).

PB&T argues that the plaintiffs fail to state a claim because it was a directed trustee whose duty it was to follow the named fiduciary's directions, unless such instructions were plainly improper.  ERISA, and the case law interpreting it, recognize the limited scope of fiduciary responsibility for "directed trustees."  In this regard, ERISA provides that:

> . . . trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent – (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustee shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this act . . ..

ERISA § 403(a)(1); 29 U.S.C. § 1103(a)(1).  ERISA's co-fiduciary liability provision further provides that:  "No trustee shall be liable under this subsection for following instructions referred to in § 403(a)(1) [29 U.S.C. § 1103(a)(1)]."  ERISA § 405(b)(3)(B); 29 U.S.C. § 1105(b)(3)(B).

The plaintiffs contend that even if this amendment were valid, the Plan Sponsor was nevertheless responsible for making the previously available matching contributions *in addition to* the matching contributions that were actually made pursuant to the 2008 scheme.  Thus, the plaintiffs claim that the appropriate course for PB&T was to interpret the Plan and its amendments in this manner and then to pursue the Sponsor for delinquent contributions.

PB&T directs this Court to the Trust Agreement, which provides: "The Trustee shall have no duty or authority to ascertain whether any contributions should be made to it pursuant to the Plan or to bring any action to enforce any obligation to make such contribution, nor shall it have any responsibility concerning the amount of any contribution or the application of the Plan's contribution formula." The Plan expressly assigns these duties to Pligrim's Pride.

Persuasive case law has qualified ERISA's co-fiduciary liability provision's language by holding that directed trustees cannot be liable for following a fiduciary's directions absent proof that such directions were plainly imprudent. *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 406-07 (7th Cir. 2006); *see also* *Maniace v. Commerce Bank, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994); *Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998); *Lalonde v. Textron, Inc.*, 369 F.3d 1, 7 (1st Cir. 2004); *Herman v. NationsBank Trust Co.,* 126 F.3d 1354, 1361-62 (11th Cir. 1997).

Without deciding, this Court notes the above law in an attempt to help the parties narrow the issues.

### ii.    Delinquent Contribution Claims in Bankruptcy

The plaintiffs allege that PB&T breached its fiduciary duties for failure to pursue delinquent contributions as a result of the Seventh and Eighth Amendments. The plaintiffs additionally state a claim for failure to file a claim for delinquent contributions in the bankruptcy proceedings. PB&T argues that there were no delinquent contributions, and if there were, it had no duty to pursue such contributions under the Trust Agreement. Rather, PB&T argues that this duty falls on Pilgrim's Pride. The relevant language

contained in the Trust Agreement states:

> The Trustee shall have no duty or authority to ascertain whether any contributions should be made to it pursuant to the Plan or to bring any action to enforce any obligation to make such contribution, nor shall it have any responsibility concerning the amount of any contribution or the application of the Plan's contribution formula.

(PB&T Ex. 10, p.2 § 3(a)(b)).

In light of the above rulings, this Court finds it unnecessary to decide these claims at this time. This Court finds that these claims are certainly intertwined with a § 502(a)(1)(B) claim for benefits, which this Court has dismissed for failure to exhaust Plan remedies. This Court believes this matter is not in the appropriate procedural posture to make such determinations as to the alleged impropriety of fiduciary wrongdoing. This Court would benefit from an established administrative record. Accordingly, this Court will reserve its ruling on these matters at a more appropriate time.

### E. Standing

The defendants assert that the plaintiffs lack standing to challenge the adoption of The Restated Plan or the First, Second, Third or Eight Amendments to the Plan. The defendants raise a similar standing defense with regards to the vote on the Plan of Reorganization in the bankruptcy court.

The Court in *Mut. Funds Inv. Litig. v. AMVESCAP PLC*, 529 F.3d 207 (4th Cir. 2008) spoke to the issue of Article III standing: "Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies . . . and 'the irreducible constitutional minimum of standing' consists of injury-in-fact, causation, and redressability." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992)).

With respect to Article III standing in the context of ERISA, the Court in **Loren v. Blue Cross & Blue Shield of Michigan**, 505 F.3d 598 (6th Cir. 2007) summarized as follows:

> Because "federal courts . . . have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction. **Bender v. Williamsport Area Sch. Dist.**, 475 U.S. 534, 541 (1986). Thus, even where statutory standing pursuant to ERISA is satisfied, the elements of Article III must be met. **Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care**, 433 F.3d 181, 199 (2d Cir. 2005). Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." **Raines v. Byrd,** 521 U.S. 811, 820 n. 3 (1997). As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." **Id.** at 818 (internal quotation marks omitted). "Article III standing . . . enforces the Constitution's case-or-controversy requirement." **Elk Grove Unified Sch. Dist. v. Newdow,** 542 U.S. 1, 11 (2004). In evaluating a party's standing, this Court must determine whether the plaintiff has alleged "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." **Warth v. Seldin,** 422 U.S. 490, 498-99 (1975) (quoting **Baker v. Carr,** 369 U.S. 186, 204 (1962)).
>
> As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. **Lujan v. Defenders of Wildlife,** 504 U.S. 555, 561

(1992).  If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction.  *Cent. States,* 433 F.3d at 198.  "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (citations omitted).  "To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Cleveland Branch NAACP v. City of Parma,* 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000)).

 Under ERISA, the contours of the requisite injury-in-fact depend on whether Plaintiffs seek monetary or injunctive relief. Plaintiffs in this case seek both forms of relief pursuant to 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) . . ..

Plaintiffs cannot bring suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan.  *See* *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 (1985) (holding that a participant's action brought pursuant to § 1132(a)(2) must seek remedies that provide a "benefit [to] the plan as a whole"); *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1417 (9th Cir. 1991) ("Any recovery for a violation of Sections 1109 and 1132(a)(2) must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries.").  As this Court explained in *Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir. 1995), although an individual may bring a § 1109 claim via § 1132(a)(2), "ERISA does not permit *recovery* by an individual who claims a breach of fiduciary duty. Instead, § 1109 contemplates that breaches of fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan."  *Id.* at

1452-53 (citations omitted). Therefore, Plaintiffs may bring suit under § 1132(a)(2) *on behalf of* their respective plans, but they are not permitted to *recover* individually, as all relief must go to the benefit of the ERISA plans themselves.

. . .

Although a plaintiff is limited to bringing suit on behalf of his or her ERISA plan when asserting a § 1132(a)(2) claim, participants and beneficiaries "can also sue for breaches of fiduciary duty that harm them as individuals." ***Smith v. Provident Bank****,* 170 F.3d 609, 616 n. 3 (6th Cir. 1999) (citing ***Allinder v. Inter-City Prods. Corp.,*** 152 F.3d 544, 551 (6th Cir. 1998) ("[Section] 1132(a)(3) is broad enough to cover individual relief for breach of a fiduciary obligation. Accordingly, individual plan participants can now bring suit under § 1132(a)(3) in their individual capacity." (internal citations and quotation marks omitted))). In addition, in ***Helfrich,*** this Court held that ERISA does not permit an individual beneficiary, appropriately bringing suit under § 1132(a)(3), to claim for himself money damages from plan fiduciaries.

> Confronted with this obstacle to recovery of his loss, [Plaintiff] denominated his requested relief as "restitution" [which is permitted in equity under § 1132(a)(3),] while measuring that relief with reference to his losses rather than [Defendant's] gains. That measure is the hallmark of money damages. Because the Supreme Court has specifically disallowed money damages as "appropriate equitable relief" under [§ 1132(a)(3) ], the district court's decision to deny [Defendant's] motion to dismiss is reversed . . .."

***Helfrich v. PNC Bank, Ky., Inc.,*** 267 F.3d 477, 483 (6th Cir. 2001).

Therefore, Plaintiffs may bring suit in their individual capacities under § 1132(a)(3) for injunctive or other appropriate equitable relief, but not for monetary damages.

Although Plaintiffs cannot bring action under § 1132(a)(2) without establishing an injury-in-fact, courts have recognized that a plan participant or beneficiary may have Article III standing to obtain injunctive relief, pursuant to § 1132(a)(3), related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm. *Cent. States,* 433 F.3d at 199 (citing *Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450 (3d Cir. 2003)). The *Horvath* Court explained:

> Here, the disclosure requirements and fiduciary duties contained in ERISA create in [plaintiff] certain rights, including the rights to receive particular information and to have [defendant] act in a fiduciary capacity. Thus, [plaintiff] need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created disclosure or fiduciary responsibilities. *See Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1148 (3d Cir. 1993) (finding "ERISA does not require that harm be shown before a plan participant is entitled to an injunction ordering the plan administrator to comply with ERISA's reporting and disclosure requirements").

*Horvath*, 333 F.3d at 456.

*Loren*, 505 F.3d at 606-11.

### i. The Restated Plan or the First, Second, Third or Eight Amendments

In light of this Court's ruling on exhaustion, this Court finds it is unnecessary at this time to decide standing issues to the extent that the defendants challenge the same as to The Restated Plan or the First, Second, or Third Amendments to the Plan. Similar to Section D of this Opinion, this Court has set forth the case law as it understands it in an attempt to further narrow the issues.

24

This Court does find it appropriate at this time, however, to dismiss the plaintiffs' claims insofar as they pertain to the Eighth Amendment. This Court finds that the Eighth Amendment affects only certain facilities at which none of these plaintiffs were employed. Therefore, this Court can find no remedy which could be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. at 180-81. Accordingly, the plaintiffs lack standing to assert this claim.

### ii.     Bankruptcy & Plan of Reorganization

On December 1, 2009, Pilgrim's Pride and many of its wholly-owned subsidiaries filed for Chapter 13 bankruptcy protection. On September 17, 2009, the debtors in the bankruptcy proceedings filed a Joint Plan of Reorganization ("the POR"). Additionally, the debtors moved to approve a proposed disclosure statement for the POR to approve the voting and solicitation procedures for the POR. Following a hearing, the Disclosure Statement was approved by Order on October 22, 2009.

Per the Disclosure Statement Order, the Debtors sent out a Voting Solicitation Package ("VSP"), which included a ballot and voting instructions. Because the Plan held shares of Company stock through the Company Stock Fund, the Plan participants were entitled to vote on the POR. A letter in the VSP dated October 29, 2009, informed the Plan participants that if they did not return the ballot by the November 30, 2009, deadline, the Trustee would vote their shares.

As noted above, Article III standing requires (1) injury in fact, (2) causation, and (3) redressability. *See Lujan*, 504 U.S. 560-61. This Court finds that the plaintiffs cannot show that any misconduct actually *caused* harm to the plaintiffs as a result of the POR

confirmation because the end result would have been the same regardless of whether the Plan shares were voted "for" or "against" it.

Confirmation of a POR requires a two-thirds vote from the equity class; i.e., the stockholders. See 11 U.S.C. § 1126. Here, the Company's shareholders overwhelmingly approved the POR 10-to1. Even excluding the Pilgrim family's votes and reversing the Plan shareholder's votes from "for" to "against," the POR nevertheless would have been confirmed nearly 4-to-1. Therefore, because the Plan votes would not have affected the outcome, the plaintiffs cannot show any harm caused by the way their votes were solicited or voted by the Plan Trustee. Accordingly, the plaintiffs lack Article III standing as to this issue, and these claims must be **DISMISSED**.

### F. Defendants Prudential Financial and Prudential Insurance Company of America

#### i. Defendant Prudential Financial

Plaintiffs allege that a letter sent by Pilgrim's to Plan participants on October 29, 2009, regarding the vote on the POR identified Prudential Financial ("PF") as the trustee. (Compl., ¶¶ 19, 64). However, neither the Trust Agreement nor the Summary Plan Description ("SPD") refer to PF. (Ex. 10 (2007 Amend. to Trust Agreement); Ex. 9, p. 5 (SPD)).

ERISA requires that the trustee "shall be either named in the trust instrument or in the plan instrument described in section 1102(a) of this title or appointed by a person who is a named fiduciary . . .." 29 U.S.C. § 1103(a). Here, as required by ERISA, the Plan's SPD and the Trust Agreement identify PB&T as the trustee. The plaintiffs do not contend

that PF is named in the trust agreement or Plan documents or that PF was appointed trustee by a Plan fiduciary. There are no allegations that PF actually acted as Trustee or had any relationship to the Plan. Therefore, this Court is of the opinion that the plaintiffs have failed to state a claim against PF. Accordingly, defendant Prudential Financial is hereby **DISMISSED**.

### ii.    Defendant PICA

The plaintiffs assert claims against PICA in Count V. The plaintiffs claim that Pilgrim's Pride owes money to a loan syndicate in which PICA is a member and that because PICA had an interest in a loan to the employer who sponsors the Plan, it became a "party in interest" when PB&T and PF voted to confirm a POR that permitted Pilgrim's to pay its debts.

ERISA's definition of the term "party in interest" addresses when corporate ownership can make an entity a party in interest:

(G) a corporation, . . . of which (or in which) 50 percent or more of – (I) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation . . . is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E);

29 U.S.C. § 1002(14)(G).

The plaintiffs fail to allege that 50% or more of PICA is owned by a party in interest. PB&T is the Plan's trustee, but there are no allegations that it owns 50% or more of PICA. PICA & PB&T are distinct entities and neither has an ownership interest in the other.

This Court finds that the plaintiffs have failed to plead facts that, if proven, would establish that PICA was a party in interest, or if it were, that it engaged in any prohibited transactions. Accordingly, defendant PICA is hereby **DISMISSED**.

## CONCLUSION

This Court believes that exhaustion of the internal remedies provided in the Plan is mandated by governing case law, but more importantly, that the process will benefit this Court and all parties involved. This Court seeks a clear administrative record which will help clarify which are the correct Plan and Plan amendments as well as the effect of the various resolutions. The Court notes that the plaintiffs never submitted a claim under the Plan's review procedures. The plaintiffs do not refute this assertion, and nothing in the record suggests to this Court that it is erroneous. Moreover, the plaintiff has not made a "clear and positive showing of futility" which would permit them to circumvent this exhaustion requirement. Accordingly, because the plaintiffs did not pursue the plan's administrative channels before filing suit, and to the extent that the plaintiffs have stated a § 502(a)(1) claim against the defendants, such claim must be dismissed for failure to exhaust administrative remedies.

For the foregoing reasons, the Court finds that Defendants Motions to Dismiss the Amended Complaint **[Docs. 52 & 54]** should be, and hereby are, **GRANTED IN PART**. Accordingly, this Court **ORDERS** as follows:

1.      Any claims derivative of the bankruptcy proceedings are **DISMISSED WITH PREJUDICE**.

2. Defendants Prudential Insurance of America and Prudential Financial are **DISMISSED WITH PREJUDICE**.

3. Any claims against the Administrative Committee of the Pilgrim's Pride Retirement Savings Plan are **DISMISSED WITH PREJUDICE**.

4. Claims regarding failure to provide 204(h) notice are **DISMISSED WITH PREJUDICE**.

5. Any claims regarding the Eighth Amendment to the Plan are **DISMISSED WITH PREJUDICE**.

6. All remaining claims are hereby **DISMISSED WITHOUT PREJUDICE** for failure to exhaust Plan remedies.

7. This matter is hereby **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: November 10, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE